IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| HANNAH and KEVIN DIETRLE, individually and as natural parents of SOPHIE DIETRLE,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>ETHICON, INC., GREAT FALLS CLINIC, LLC, and JOHN DOE PERSONS, CORPORATIONS AND ENTITIES 1–10,<br><br>　　　　　　Defendants. | CV 24–116–GF–DLC<br><br><br>ORDER |

Before the Court is Plaintiffs Hannah and Kevin Dieterle's ("Plaintiffs") Motion to Remand this matter to Montana Eighth Judicial District Court, Cascade County, pursuant to 28 U.S.C. § 1447(c). (Doc. 12.) Plaintiffs further seek an order awarding costs and attorney fees. (*Id.* at 1.) Defendant Megadyne Medical Products Inc. (erroneously named as Ethicon Inc. and hereinafter referred to as "Megadyne") has filed a Brief in Opposition. (Doc. 19.) For the reasons herein, the Motion is granted in part and denied in part, and this matter is remanded to the Montana Eighth Judicial District Court, Cascade County.

- 1 -

## BACKGROUND[1]

Plaintiffs are the parents of Sophie Dieterle who, at five years old, underwent a routine tonsillectomy at Defendant Great Falls Clinic ("GFC") in April 2023. (Doc. 6 ¶ 6.) During Sophie's surgery, the doctor used electrosurgical instruments, including a patient return electrode pad that was manufactured, sold, and/or supplied to GFC by Megadyne. (*Id.* ¶ 7.) Sophie sustained electro-thermal burns on her backside from the return electrode. (*Id.* ¶¶ 8–15.)

Plaintiffs filed the Amended Complaint on November 13, 2024, in the State of Montana, Cascade County District Court, DV-7-2024-563-OC, alleging claims against Megadyne, GFC, and unnamed John Doe Persons, Corporations, and Entities. (Doc. 6.) Plaintiffs are citizens of the State of Montana; GFC is a Montana Limited Liability Company and is also a citizen of Montana; and Megadyne is a citizen of Utah. (*Id.* ¶¶ 1, 2, 4; Doc. 1 ¶ 7.)  The FAC brings three claims for relief: (1) strict product liability against Megadyne; (2) breach of warranty against Megadyne; and (3) negligence against GFC. (Doc. 6 ¶¶ 27–41.) On December 19, 2024, Megadyne removed the action to federal court, alleging that GFC was fraudulently joined. (Doc. 1 ¶ 11.) On January 2, 2025, Plaintiffs filed the present

---

[1] The facts taken from the First Amended Complaint (Doc. 6) are assumed true for purposes of resolving the present Motion. *See Giard v. Oullette*, 2012 WL 5386958, at *1 (D. Mont. Nov. 1, 2012).

Motion to Remand. (Doc. 12.) Also pending before the Court is Megadyne's Motion to Dismiss, which was filed on January 3, 2025. (Doc. 14.)

## LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts have . . . original jurisdiction." 28 U.S.C. § 1441(a). Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined. *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). Fraudulent joinder "applies when a non-diverse defendant's joinder is a sham—that is, when a party is joined without any reasonable basis in fact and without any purpose to prosecute the action in good faith." *In re Roundup Prods. Liab. Litig.*, 2021 WL 4186714, at *1 (N.D. Cal. Sept. 15, 2021) (citation and internal quotations omitted).

## DISCUSSION

### I.   Fraudulent Joinder

As an initial matter, it appears the parties disagree as to the proper standard governing Plaintiffs' Motion to Remand. Plaintiffs argue that "if there is any reasonable possibility the plaintiff could prevail against the non-diverse defendant,

there is no fraudulent joinder," and that the Court must consider whether any deficiencies may be cured through amendment. (Doc. 13 at 10.) In response, Megadyne accuses Plaintiffs of misconstruing the standard governing fraudulent joinder: whether Plaintiffs could advance "*any* claim" "under *any* theory," Megadyne contends, would mean that "no defendant would ever be found to be fraudulently joined." (Doc. 19 at 6, 7 (quoting *Curtis v. Providence Health & Servs.*, 2019 WL 553450, at \*6 (D. Alaska Feb. 12, 2019)).)

There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted). The Ninth Circuit set forth the analysis governing the second avenue in *Grancare*, a leading case that Megadyne—for reasons still unclear to this Court— neglects to address in its Opposition Brief. In *Grancare* the court articulated that "[f]raudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory." 889 F.3d at 548. However, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)). "The relative stringency of the

standard accords with the presumption against removal jurisdiction," pursuant to which courts "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Id.* at 550 (citation omitted). The Court will therefore consider Plaintiffs' Motion in light of the standard set forth by *Grancare*.

Megadyne does not dispute the citizenship of GFC, nor does it assert that the Amended Complaint misrepresented GFC's citizenship. The issue, therefore, is whether Plaintiffs' Amended Complaint raises the "possibility" of recovery against GFC. *See id.* (finding that plaintiffs have shown a possibility of recovery); *Curtis*, 2019 WL 553450, at *6 (inquiry is whether the operative pleading provides some basis for recovery). In making this inquiry, "[t]he district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550. This standard is less demanding than the Rule 12(b)(6) plausibility standard. *Grancare*, 889 F.3d at 549. Indeed, "[t]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent"; rather, "[a] claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.*

The Amended Complaint alleges that GFC is liable in negligence. However, as Defendants correctly observe, there is a clear distinction between "the conduct by health[]care providers in the 'actual practice' of the profession" and the "acts or

- 5 -

practices in the conduct of the entrepreneurial, commercial, or business aspects of running a hospital," which form the basis of a general rather than professional negligence claim. *Selensky-Foust v. Mercer*, 510 P.3d 78, 83 (Mont. 2022). To establish a claim for medical negligence in Montana, a plaintiff must plead the "applicable standard of medical care, that such a standard was departed from, and that a breach of duty was the proximate cause of the injury." *Montana Deaconess Hosp. v. Gratton*, 545 P.2d 670, 673 (Mont. 1976).

Plaintiffs argue that because they state either a valid claim for medical negligence, or may state a viable claim through amendment, GFC is not a "sham defendant" and diversity of citizenship does not exist. (Docs. 13 at 2; 23 at 1.) Megadyne responds that because Plaintiffs did not undergo a review by the Montana Medical Legal Panel, and because Plaintiffs are concerned with the medical care rendered to Sophie, the facts alleged in the Amended Complaint cannot form the basis of a general negligence claim. (Doc. 19 at 9–10.) Relying on *Curtis*, Megadyne concludes "[t]hat Plaintiffs now assert that they *could* assert a medical negligence claim if given the chance to amend their pleadings is not the standard for evaluating a motion to remand[;]" "[r]ather, the proper inquiry is whether leave to amend on the claim could be granted." (Doc. 19 at 9 (citing *Curtis* 2019 WL 553450, at *6).)

Though Megadyne is partly correct—the proper inquiry is indeed whether the deficiency could be cured by amendment—it appears Megadyne is also arguing that by choosing not to bring a medical negligence count in the first instance, Plaintiffs have somehow forfeited that claim. This is not what *Curtis* instructed, nor is it in accordance with the standard set forth by *Grancare*. In *Curtis*, the district court observed that "[i]f plaintiffs were aware of other conduct by [the defendant] that could constitute interference, then surely they would have included it in their amended state court complaint *or argued in the instant motion that they had additional factual support for their claim.*" 2019 WL 553450, at *6 (emphasis added). That is precisely what Plaintiffs have done in briefing their Motion to Remand. (*See* Doc. 13 at 8.)

Specifically, Plaintiffs represent that they have taken GFC through the Montana Medical Legal Panel process, thereby overcoming the bulwark of Megadyne's concerns. (Docs. 13 at 8–9; 19 at 10.) Moreover, the Amended Complaint alleges that "Sophie's burns were caused by a defective product or a combination of a defective product and improper use by the surgical team." (Doc. 6 ¶ 24.) The Amended Complaint further alleges that "[a]ccording to [Megadyne], Sophie's burn injuries were caused by improper use and/or placement of the return pad by GFC agents, employees, and staff during Sophie's procedure." (*Id.* ¶ 39.) Finally, the Amended Complaint alleges that "[t]o the extent [Megadyne]

establishes that GFC provided substandard care and was negligent, Plaintiff also asserts those positions and GFC is liable for Plaintiffs' injuries, damages, harms and losses," and "Defendants are jointly and severally liable to Plaintiffs for damages caused by the defective product and/or negligence." (*Id.* ¶¶ 38–41.)

While these allegations are—as Plaintiffs aptly acknowledge—inartful, doubts arising from such imperfections must still be resolved in favor of remand. *Giard v. Ouellette*, 2012 WL 5386958, at *2 (D. Mont. Nov. 1, 2012) ("Doubt arising from inartful, ambiguous, or technically defective pleadings must be resolved in favor of remand."). Indeed, fraudulent joinder may only be found if the deficiency cannot "possibly be cured." *Curtis*, 2019 WL 553450, at *6.

That is not the case here. The allegations pled in the Amended Complaint— specifically those pertaining to improper use and substandard care by GFC staff— are sufficient to raise the "possibility" of a claim for medical negligence against GFC, and any deficiencies in the Amended Complaint—like, for example, its failure to plead the elements of medical negligence—may be cured by amendment. There is a "general presumption against [finding] fraudulent joinder," and a defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden." *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046). Megadyne has failed to carry this burden. Therefore, the Court finds that GFC is not a sham defendant for purposes of defeating diversity.

### A. Comparative Negligence and Exhibit 1

Megadyne further argues that Plaintiffs fail to assert a claim for comparative negligence. (Doc. 19 at 11.) In reply, Plaintiffs represent that they are not asserting a claim for comparative negligence. (Doc. 23 at 9.) The Court will therefore not consider this argument. Furthermore, because the Court did not consider Exhibit 1 in reaching its decision, it declines to address whether the Exhibit should be stricken from the record.

## II.     Attorney Fees and the Reasonableness of Removal

Costs and attorney's fees may be awarded against Megadyne if its decision to remove was objectively unreasonable. *Grancare*, 889 F.3d at 552; *see also* 28 U.S.C. § 1447(c). "Removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would also be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (internal quotation omitted).

Here, Plaintiffs argue that because Megadyne lacked an objectively reasonable basis in seeking removal, the Court should award Plaintiffs costs and fees. (Doc. 13 at 11.) Plaintiffs contend that a simple reading of *Grancare* should have informed Megadyne that its basis for removal lacked merit. (*Id*. at 11.) The Court disagrees. Though ultimately unsuccessful, the mere fact that Megadyne's arguments lacked merit is insufficient to warrant an award of fees. *Lussier*, 518

F.3d at 1065. Moreover, it is not apparent that Megadyne's decision to remove the action was objectively unreasonable, particularly in consideration of whether Plaintiffs may plead a claim for medical negligence. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Therefore, the Court declines to award fees in this instance.

## CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Motion to Remand (Doc. 12) is GRANTED in part and DENIED in part. This case is REMANDED to the Montana Eighth Judicial District Court, Cascade County. Plaintiffs' request for attorney fees is DENIED.

IT IS FURTHER ORDERED that Megadyne's Motion to Dismiss (Doc. 14) is DENIED as moot.

The Clerk of Court is directed to close this case file.

DATED this 29th day of July, 2025.

_____
Dana L. Christensen, District Judge
United States District Court